Good morning, Your Honors. Catherine Young from the Federal Public Defender's Office for Appellant Mr. Suastegui. Mr. Suastegui challenges the district court finding that he was ineligible for safety valve relief. There are five requirements for such relief and only one of such requirements is at issue here. To qualify for safety valve relief, the defendant must prove by a preponderance of the evidence that he did not possess a firearm in connection with the offense. And the focus of this brief is whether the firearm was possessed in connection with the offense. What difference does it make if he had the firearm where he lived so he could be alive and tend his plants or whether the firearm was at the plants? Does it make a difference? I understand what Your Honor is saying. And I think that in the Ferryman case they draw exactly that distinction. If you're possessing the firearm because you want to stay alive, you want to protect yourself from some other threat, in this case wildlife, that is not the same thing as protecting yourself in connection with drug offenses. The only reason he was there was to cultivate marijuana plants, forgetting about the duress argument. He was there to cultivate marijuana plants. And he was there to protect himself, his colleague, and the plants. And he had a gun. So that's in connection with his work. If he was scared of bears, he could have walked out of the park. The only reason he was there was to cultivate the plants. 8,000 of them, 7,000 of them, a lot of plants. With respect to Your Honor's argument that he could have walked out, I think the problem here is that he's from a place in Mexico where he's afraid for his family. He's got an extended family there. Parents, siblings, a wife, children, they're all under threat of murder or disappearance from the gang. And that's the reason he's there. That evidence is unequivocal. He's afraid that if he doesn't go grow the marijuana that his family is going to disappear or be murdered or he himself would be in danger. So he's there. But he says that he and both Avalos both say consistently they would not have used the firearm in connection with the marijuana grow. They would have run away. They were not going to attack anyone in connection with the grow. They were only going to defend themselves against wildlife. Now, is the district judge required to believe that was so? That is to say that they would have run away? Well, I think, Your Honor, the evidence is unequivocal. And with respect to Avalos, with respect to the finding in Avalos, he did believe Avalos. So the question is whether it was clearly erroneous in this context not to believe Swastiki. And so if Your Honor ---- Well, the district judge believed that the two men behaved differently. The other defendant, he said, you know, you tried to distance yourself from the firearm. We have statements that the district judge believes that your client was the one who loaded and unloaded the firearm. There was a much greater connection between your ---- in the view of the district court between your client and the firearm. So, yes, he treated the two people differently. And he gave fairly good reasons as to why he treated them differently based upon their different relationship to the firearm. I understand Your Honor's argument. But I think there's ---- in this case, the question is, it's clear there was a little more contact with the firearm, although there's some dispute in the record whether Avalos was really as clear with the firearm as he said he was. But the question ---- Is there more than just one statement that he loaded the gun? I think that there is ---- it all comes back to one statement. There's a sheriff's report at the beginning of a statement that was given to authorities after they were arrested. And I think that that statement is taken and kind of evolves. And in the PSR, the defense counsel says it's magnified and, in fact, misquoted. But there was a statement that he loaded the firearm. But the question is, for the purposes of this appeal, was it in connection with the drug-trafficking offense? Was it in connection with the marijuana grow? And that's where we think the evidence is unequivocal that it was not. And I think that ---- I disagree with you on that point. But let's assume that he was only using it to protect himself from wild animals. I'll come back to Judge Hellerstein's question. They are there to cultivate the plants. They are there to protect themselves against wild animals. And, of course, they're protecting themselves from wild animals in order that they can cultivate the plants. Why is that not in connection with? Well, I think because if you look at Ferryman, in Ferryman the issue was whether or not they had these panoply of weapons in a house in which drugs were possessed. And the Court didn't say, well, it doesn't matter why they were there. The fact that there were ---- this was a drug-trafficking activity in this house and there were guns in this house, that doesn't matter. The Court said he ---- his explanation for the guns was that there had been a burglary and that he wanted to protect himself. The Court didn't say that's irrelevant because there was drug-trafficking there. The Court said we don't believe that explanation in the context of how these firearms were maintained. So I think there is a distinction to be drawn between protecting your life, using firearms to protect your life, even if you might otherwise be engaged in an illegal activity, you're entitled to protect your life from another threat. I understand that. But again, I guess this is Judge Hellerstein's point. If you're talking about a threat, whether real or imagined, but if you're talking about a threat to your home where you live and carry on lawful activities, that's different from a threat when you're out in the mountains and the only reason you're there is to engage in an illegal activity. Well, I think that was their habitat, that was their campsite, that was the place where they lived. And I understand. But, of course, the only reason they're living there is in order to carry on the illegal activity. I understand what Your Honor is saying, but I don't think that that's a distinction that has been drawn in the prior cases. I think you ---- that you aren't entitled to protect your life. You may be about to get it. I ask another question. Let's suppose that I believe that there is justification for how the district judge punished Swastiki. Is there an argument that there's a disparate punishment between Swastiki and Avalos? After all, the PSR said they were equally culpable. Well, I think there's ---- It didn't really make a difference who it was. And, really, the police who surveilled couldn't tell which one it was. So if I have trouble worrying about the distinction and punishment, is that a grounds that you're interested in? Well, I am very concerned about it, too. But, unfortunately, you're dealing with a statutory mandatory minimum. Yes, but there's also a point in 18 U.S.C. Section 3553A.6 where there should not be disparate sentencing, and the disparate sentencing is driven by how the district judge applied the safety valve. And if one argues that he applied it inconsistently between two equally culpable defendants, is that a ground? I've never encountered this in relationship to a mandatory minimum, but I worry about that. Well, I think it's a ground in connection with the attack on the mandatory minimum. I think you would have to find that the safety valve was erroneously denied, which is the thrust of our argument here. And if one believes that the district judge was justified in Swastiki and not justified in giving a break to Avalos, is there a remedy that would be of interest to you? Well, it would be of interest to me, Your Honor, but I think that the only ‑‑ I think that the only meritorious attack he has is on the fact that the safety valve relief was erroneously denied. And ‑‑ And specifically in terms of possession of a gun in connection with the offense. Yes. And it really doesn't make a difference if the gun carrier was Avalos or Swastiki because the gun was there for the benefit of both. Yes. But I think that it's clear, and even in Avalos's transcript, which I thank the Court for requesting, it says the loaded firearm was at the campsite, not the cultivation site. I think there's undisputed evidence, and even the government, in connection with the safety valve requirement, found that these men were truthful in their recitation of the facts of the offense. I want to leave a little bit of time for rebuttal, but I did want to say ‑‑ Let me say this. You haven't sat in this courtroom long enough to realize what a patsy I am with respect to time. Answer the questions as long as you need to. If you run out of time, I will give you a chance for rebuttal. Okay. So don't be nervous. Okay. Thank you. Now, I just did want to make the point that I think that even the Avalos transcript shows that the gun was kept at the campsite, not at the cultivation site, that there were no drug paraphernalia at the campsite, that they were afraid of bears, they were warned against bears, they saw bears, they were reasonably feared of bears, and they would not have used the gun to protect the crop. Both of them said that. They did not intend they would have run away. And the government agreed that they were honest in saying that. So I think that in this case, the safety valve relief was erroneously denied. And then I would like to reserve ‑‑ unless there are any further questions, I would like to reserve some time for rebuttal. Thank you very much. Thank you. Good morning, Your Honors. Megan Blanco for the United States. The district court in this case did not clearly err in finding that defendant Swastegi was ineligible for the safety valve. The record at pages 15 through 17 articulates various grounds on which the district court found that not only did defendant Swastegi possess the firearm in connection with the drug manufacturing offense, but in fact that he possessed it in furtherance of the drug manufacturing offense. Specifically ‑‑ Without an evidentiary hearing. I'm sorry, Your Honor? Without an evidentiary hearing. That's right. Without an evidentiary hearing, Your Honor. The district court relied on statements made by defendant Swastegi to arresting officers in June of 2010. Those statements were not disputed by defendant Swastegi. In addition, Your Honor, the district court continued the sentencing. The initial sentencing hearing was held two months prior to the final sentencing hearing. At the initial sentencing hearing, the case agents of the case were present, were sitting at counsel table, and certainly could have been cross-examined should Mr. or would Mr. Swastegi's attorney have requested that to happen. That request was never made. And the district court, relying on evidence ‑‑ The initial argument, Your Honor, was made on July 25th, 2010, and the subsequent argument about safety valve was made on September 27th, excuse me, 2011. And in relationship to the two hearings? When was the initial argument made, Your Honor? Yes. The initial argument was ‑‑ When the case agents were there. At the July 25th hearing. And was the safety valve issue present at that time? It was, Your Honor. And at that point, the district court continued the sentencing hearing so that defense counsel for Mr. Swastegi could gather additional evidence and additional arguments in furtherance of the safety valve. Also during that hearing, the district court noted that it was unlikely going to find that safety valve was an appropriate remedy for Mr. Swastegi. Your Honor, even though ‑‑ moreover, Your Honor, I don't think that even if we had an evidentiary hearing, the result would have changed. It would not have changed because even if you accept Defendant Swastegi's reasons for possessing the gun, that is, that he possessed the gun to protect himself and Defendant Avalos from wild animals, that possession would still have been in connection with the drug manufacturing defense. Suppose Avalos carried the gun. Would that have been adequate to prove possession on the part of Swastegi? If Defendant Avalos did, I don't believe so, Your Honor. Why not? They're both in a common endeavor. They were both in a common endeavor. I have not found any Ninth Circuit cases or cases for that matter outside of the Ninth Circuit that say you can use the conspiracy theory to attribute possession to another defendant. Well, that's how Swastegi pleaded to a conspiracy. He did plead to a conspiracy to manufacture the drug, Your Honor. With respect to the application of conspiracy to the safety valve, which I do think is a separate issue, I have not found or am unaware of any cases that suggest the court could have used that same conspiracy theory to attribute possession to Defendant Avalos. Well, if it was reasonably foreseeable that the way to cultivate the plants in Swastegi was to have a gun, you satisfy the requirement of possession. What's notable in this case, Your Honor, is that Defendant Avalos indicated that he intentionally did not possess the gun. So the primary academic difference between Defendant Avalos. He never said that. Your Honor, I believe during his interview with the case agents, they asked him, did you ever touch the gun or hold it, and he said no. I believe I touched it once just out of curiosity. The two were observed over the course of over a week by case agents. During that ---- Who could not tell who was who? I don't believe that's right, Your Honor. The case agents, in fact, indicated that it was Defendant Swastegi who possessed the gun. That was the judge, not the case agents. Where is that in the record, that the case agents identified the defendant? It was, Your Honor, during the ---- and I understand that the district court inaccurately referenced the PSR. There is no reference in the PSR to that fact. Right. However, during the July 25th hearing, the case agent was at council table with me. That question was posed. I asked the case agent and reported back to the court that the case agents were only able to see Defendant Swastegi with a gun. It's also like ---- Defend what? We're able to see only Defendant Swastegi with a gun, not Defendant Avalos. The evidence I saw is that they couldn't tell. That was ---- The evidence they were looking with their binoculars and they couldn't tell? The arguments ---- They never approached close enough to know. The arguments proffered by defense at the September 27th hearing, Your Honor, was that the pictures, in the pictures, the identity of the person who possessed the gun was unclear. However, the case agents did indicate that they could tell, although the pictures may not have been clear, that it was Defendant Swastegi who possessed the gun. Where do you see that? Where is that in the record? That's what I was going to ask. If I may have one second, Your Honor. Thank you. Page 146, perhaps. I believe it's probably right, Your Honor. Starts page 144. Page 144 and 146 in the affidavit in support of the complaint, Your Honor, does address or describe the case agents who saw Defendant Swastegi possess the gun. In addition to that, Your Honor ---- It's one man and second man. Look at paragraph 12, page 145. One of the men began walking toward the cultivation site. The second man stayed at the rocks where he appeared to be acting as a lookout, cautiously looking around the area and watching the other man as he walked to the cultivation site. Paragraph 13. Detective Rosa watched the two men walk around the camp area until approximately 945 a.m. At that time, one of the men began walking toward the cultivation site while the other man stayed at the rocks as the lookout. Rosa watched the men for a while. One man worked on the plants at the cultivation site while the other acted as the lookout and guard. I don't know. How there could be a distinction between the two men is beyond me. Your Honor, on page 31, during the ---- what should have been the original sentencing for Mr. Swastegi and then ---- Page 31 of the exception record? Yes, Your Honor. That evolved into a status conference. It was during this hearing that the lead case agent was at counsel table with me. The court asked, in reference to Mr. Swastegi, as I understand it, the surveilling agent surveilled. When they were surveilling, the defendants observed him, and I believe it should have been case agents, observed him in possession with a loaded, in possession of the shotgun. At that point, I conferred with the case agent, and my response was, that's correct, Your Honor. I believe that ---- I don't have that. Page 31? That's right, Your Honor. Would Your Honor like my copy? I have it. I don't have a copy, so ---- I don't know where the source of the information is for the leading question by the court. It doesn't say. But you represent us. And before you answered, that's correct, Your Honor.  I did, Your Honor. The case agent, as indicated at the very beginning of the call, was at counsel table with me. And I think I'm right, and the defense counsel can respond as to, I think the argument in front of us has not been that there's insufficient evidence from which the district judge could conclude that he possessed the firearm or that he loaded or unloaded it. My understanding is that the argument from the defense counsel is that he possessed it, but not in connection with. So you can correct us when you get up. I do believe that is their argument, Your Honor. And again, as described in the government's papers, Defendant Swastegi did possess it, not only in connection, but in furtherance of the drug money. But this question and answer does not elucidate that point as to where he possessed it, because they're making a distinction between him possessing it for protection against wildlife in the forest as opposed to possessing it for protecting the marijuana crop. That's right, Your Honor. So this doesn't help us on that point. No. This, I think, goes to whether Defendant Swastegi, in fact, possessed the gun. And there's no dispute he admitted to the case agents and never denied, either at the district court level or on appeal, that he did possess the firearm, Your Honor. Okay. Unless Your Honors have any additional questions, I submit. Thank you. Thank you very much. Ms. Young. Thank you, Your Honors. I'll be very brief. I just – the prosecutor was saying that the Court relied upon statements made by Swastegi, but the statements – Can you speak a little slower? I'm sorry. Oh, I'm sorry. The statements made by both Swastegi and Avalos were consistent, that the firearm was maintained at the campsite, that's what the new transcript reflects, never at the cultivation site. But didn't he say that he was given the weapon to protect the crop? They both said that. That's one of the reasons the lunch man told them. The lunch man said, here is a weapon to protect the crop and to protect yourselves from bears. But they both said – And from thieves. They both said from day one. And, you know, when they were interviewed right after they were arrested, they're poor, they don't understand that the technicalities of how they possessed the firearm could result in the distribution between a 48-month sentence and a 120-month sentence. And they both say – I'm sorry, Your Honor. Sorry. No. I mean, they were both consistent. They would not have used the weapon to protect the cultivation. And I also wanted to note in connection with the inconsistency between the two sentences and the disparity, Avalos may have took the position that he intentionally did not possess the gun. I'm so sorry. I'm so sorry. I realize my time is running out and I'm trying to erase the answer. I apologize. Number one, don't worry about the time. I'm so sorry. And if you're talking too fast for a New Yorker, you're talking too fast. I'm sorry. I'm trying to erase the clock, but I will slow down. And Swastiky's counsel said that Avalos' possession of the firearm was actually more extensive than he admitted. And that, I think, is consistent with Avalos' statements. When Avalos was asked in Avalos' sentencing positions when he's talking about who was in those pictures, he said he believes it was Swastiky. Now, if Avalos knew that he had never carried the firearm and there could not be pictures of him, he would have said I know it has to be Swastiky, not I believe it has to be him. And the fact that he admitted having touched it is, I think, to protect himself from the fact that his fingerprints probably were on the weapon. So I think there is there is. But that doesn't help your client. That just implicates the other defendant. Well, I think it goes to the unwarranted sentencing disparity issue, Your Honor. Okay. And unless there are any further questions. Okay. Thank you both. I'll slow down. Thank you. Thank both sides for a good argument.
judges: Hellerstein, Fletcher, Rawlinson